UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JOSEPH CARIONE,

                Plaintiff,

                                                  **MEMORANDUM & ORDER**
        - against -                               **03 CV 4024 (DRH)**

UNITED STATES OF AMERICA,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

Kase & Druker
Attorneys for Plaintiff
1325 Franklin Avenue, Suite 225
Garden City, New York 11530
By:    James O. Druker

Alan Martin Shapiro
Attorney for Defendant
U.S. Department of Justice
Civil Trial Section, Northern Region
P.O. Box 55 Ben Franklin Station
Washington, DC 20044-0055


**HURLEY, District Judge:**

       Before the Court is plaintiff's motion to hold defendant in contempt for failing to properly calculate interest on the Amended Judgment previously entered in this case. (*See* docket no. 44.)   Plaintiff also seeks an order directing defendant to recalculate the interest, as well as sanctions in the form of attorney's fees associated with bringing his

motion. For the reasons that follow, plaintiff's motion is granted in part, and denied in part.[1]

## BACKGROUND

The facts underlying plaintiff's original claims in this action are set forth in the Court's March 17, 2005 Memorandum and Order in which the parties' cross motions for summary judgment were granted in part and denied in part, *see Carione v. United States*, 368 F. Supp. 2d 186 (E.D.N.Y. 2005)("*Carione I*"), as well as in the Court's May 2, 2005 Order denying defendant's subsequent motion for reconsideration, *Carione v. United States*, 368 F. Supp. 2d 196 (E.D.N.Y. 2005). A familiarity with these facts is therefore assumed for present purposes; only those facts necessary to address the instant motion will be recounted below.[2]

This action arises from an overpayment that plaintiff made to his federal taxes in the late 1990s. In October 1999, plaintiff filed a tax return for the 1998 tax year which included a reported capital gain from the 1998 sale of his commercial trash-hauling business, Grand Carting, Inc ("Grand Carting").[3] The cited capital gain, however, never actually inured to plaintiff's benefit in 1998. Rather, the proceeds of the sale were deposited in escrow pursuant to a post-indictment restraining order entered by this Court following plaintiff's 1996 indictment for violations of the Racketeer Influenced and

---

[1] As the Court considered the contents of defendant's proposed sur-reply in deciding this motion, defendants motion to file this document, on which the Court previously deferred ruling, is hereby granted. (*See* docket no. 48; Order dated 7/27/11.)
[2] Unless otherwise stated, such facts are taken from *Carione I*.
[3] Grand Carting, Inc. was organized as an S Corporation with plaintiff as its sole shareholder. *See Carione v. Comm'r*, T.C. Memo 2008-262, *5 (T.C. 2008). Income and loss for the corporation was reported on plaintiff's individual income tax returns. *Id.*

Corrupt Organizations Act, 18 U.S.C. § 1961. Plaintiff nevertheless paid the entirety of his 1998 tax liability, including $49,400 for the sale of Grand Carting on September 18, 2000.[4] In August of 2000, the proceeds of the sale were transferred from the escrow account to the United States in satisfaction of the forfeiture judgment entered against plaintiff in his criminal case.

Plaintiff then brought the instant civil action, asserting, *inter alia*, that he did not owe taxes on the sale of Grand Carting because he never possessed "dominion or control" over its proceeds. This Court concluded in *Carione I* that plaintiff was correct "insofar as the sale proceeds remained in escrow," *Carione I*, 368 F. Supp. 2d at 192, but that he eventually received a "taxable economic benefit in 2000 when the proceeds of the asset sale were used to satisfy the outstanding criminal forfeiture order," *id.* at 194.[5] The 1998 sale was therefore deemed a taxable event in the year 2000, rather than 1998. *Id.* The Court then entered judgment (hereinafter, the "Amended Judgment")[6] in favor of

---

[4] No explanation is provided for why plaintiff's 1998 taxes were not paid until September 18, 2000, nevertheless, the parties do not dispute that the overpayment was made on that date, or that it should serve as the date for calculating interest on the overpayment. Also see note 7, *infra*.

[5] Plaintiff made a separate claim for the same relief before the United States Tax Court, which held in November 24, 2008 that it agreed with this Court's prior conclusion that the Grand Carting sale was taxable in the year 2000. *Carione v. Comm'r*, T.C. Memo 2008-262 at *13.

[6] Following the Court's summary judgment decision and subsequent denial of reconsideration, defendant appealed the matter to the Second Circuit, and plaintiff cross appealed. The appeals were both dismissed by stipulation. (*See* USCA Mandates, docket nos. 35, 36.) The Court then entered judgment on October 19, 2006, which was later vacated by stipulation. The final amended judgment was entered on November 27, 2006. (*See* docket nos. 39, 41.)

plaintiff, awarding him "an overpayment credit, as of September 19, 2000,[7] to his 1998 income tax account" totaling $54,783.48. (*See* Amended Judgment dated 11/27/06, docket no. 41.)

What ensued is the subject of plaintiff's instant motion. Plaintiff describes the Amended Judgment as the fruits of a "successful refund suit" against the United States. (Affirmation of James O. Druker, counsel to plaintiff ("Druker Aff.") ¶ 2.) Yet to plaintiff's surprise, instead of receiving what he perceived would be a windfall for the tax years involved, he was instead "issued a deficiency notice for [the tax year] 2000 in the amount of $88,914." (Druker Aff. ¶ 8.) In other words, what plaintiff expected would be a $54,783.48 win, actually resulted in a significant loss.

This apparent incongruity came about through the differing methods by which defendant calculated interest on what plaintiff was credited and on what he owed. Consistent with the Amended Judgment in this case, defendant credited plaintiff's 1998 taxes with the appropriate overpayment. (Defendant's Memorandum in Opposition to Plaintiff's Motion ("D's Opp.") at 1, 5-6.) After adding interest on the original overpayment—calculated from September 18, 2000 (the date that plaintiff made the overpayment) through April 15, 2011 (the date that his payments on the year 2000 taxes were due)[8]— and after giving plaintiff "the benefit of additional abatements," his total

---

[7] The Amended Judgment states that plaintiff has an overpayment credit "as of September 19, 2000," but states elsewhere that interest on that payment should run from September 18, 2000. As the relevant question at issue here is the running of interest, and as the parties both refer in their papers to September 18, 2000 as the date that plaintiff originally paid his 1998 taxes, the Court will consider September 18, 2000 to be the controlling date for present purposes.
[8] The interest on the overpayment came to $2,869.14.

credit came to $63,067.85. (*See* D's Opp. at 5-6 (citing plaintiff's IRS "Account Transcript," attached to the Druker Aff. as Exhibit B).) Defendant also applied that credit, pursuant to 26. U.S.C. § 6402, towards plaintiff's 2000 taxes, the year in which plaintiff was deemed to have received a taxable economic benefit from the sale of Grand Carting, and the year for which the tax liability from that sale would be assessed.

Of course, the Court did not determine until years after the fact that the taxable event occurred in 2000 instead of 1998. Payment on income taxable in the year 2000 was due on April 15, 2001, and, according to defendant, plaintiff had not paid the portion of his 2000 taxes related to the Grand Carting sale by that due date.[9] Defendant therefore began running interest on the 2000 underpayment on the date it was originally due, *viz.*, April 15, 2001. In other words, on April 15, 2001, defendant started the running of interest on plaintiff's underpayment (the money owed to the Government), but stopped the running of interest on his overpayment (the money owed to plaintiff). The end result was that on April 20, 2009, when defendant issued an assessment on plaintiff's 2000 taxes, the amount of the underpayment with interest had far exceeded the amount of the overpayment with interest, creating a negative balance. (Druker Aff. ¶¶ 25, 32, Ex. C.)

Plaintiff's instant motion argues that defendant's method of calculating interest is not only "violates both the letter and the spirit of the judgment," (DrukerAff. ¶ 2) but is

---

[9] There is no evidence in the record that plaintiff had any other unpaid tax liability for 2000 aside from what he owed from the Grand Carting sale. Furthermore, defendant's motion before the Tax Court to impose tax liability on plaintiff for the interest earned on the proceeds of the Grand Carting sale while those proceeds were held in escrow was denied as untimely. *Carione v. Comm'r*, T.C. Memo 2008-262 at *19 -*20.

5

also "simply wrong," (Memorandum of Law in Support of Motion for Contempt ("P's Memo") at 5).

## DISCUSSION

I. THE CALCULATION OF OVERPAYMENT INTEREST

Defendant states that it calculated the interest on plaintiff's overpayment in accordance with 26 U.S.C. § 6611(b)(1). That provision reads as follows:

> (b) Period. Such interest shall be allowed and paid as follows:
> (1) Credits. In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.

26 U.S.C. § 6611.

In applying this provision, defendant calculated interest on plaintiff's credit beginning on the "date of the overpayment" of plaintiff's 1998 taxes, or September 18, 2000, through the "due date of the amount against which the credit is taken," or April 15, 2001. (D's Opp. at 5.) Plaintiff argues, however, that interest on his overpayment should run from the date that payment was made, September 18, 2000, to the date that defendant issued an assessment on his 2000 tax liability, or April 20, 2009.

In support of this position, plaintiff cites to *Industrial Development Corp. v. United States*, 138 F. Supp. 63 (N.D. Ill. 1955) and *Virginia Electric & Power Co. v. United States*, 126 F. Supp. 178 (Ct. C. 1954). However, as defendant points out, these cases were based on subsection 3771(b)(1) of the Internal Revenue Code of 1939. That version of the Code has been subsequently amended, and the cited subsection replaced by

26 U.S.C. § 6611(b)(1). Notably, the revised section 6611(b)(1) omits language previously found in 3771(b)(1) referencing the "date of the assessment of that amount." Therefore the portions of the cases cited by plaintiff no longer apply to the calculation of an overpayment credit, and defendant correctly applied section 6611(b)(1). *Cf.* 26 C.F.R. § 301.6611-1(h)(2)(vi)("In the case of a credit against an additional amount, addition to the tax, or assessable penalty, the due date is the earlier of the date of assessment or the date from which such amount would bear interest if not satisfied by payment or credit.").

Plaintiff also contends that he is entitled to nine percent interest on the amount of the credit granted in the Amended Judgment through April 20, 2009 as if he was awarded a money judgment. (*See* P's Memo at 7); *see also* 28 U.S.C. § 1961(a). The plain language of the Amended Judgment makes clear, however, that plaintiff was not awarded a money judgment. Rather, he was awarded an "overpayment credit" to his 1998 taxes. As plaintiff noted in the parties' joint Rule 60 motion to vacate the original judgment, this is an "internal revenue tax case," and therefore 28 U.S.C. § 1961(c)(1) applies. (*See* Joint Motion under Fed. R. Civ. P. 60, docket no. 40.) According to that joint motion, the office of the Clerk of Court was therefore in error when it previously calculated interest at the typical nine percent interest rate under § 1961(a). (*Id.*) Plaintiff's current argument that interest should be calculated under section 1961(a) is in conflict with section 1961(c)(1) as well as his prior assertions to the Court in his Rule 60 motion. As § 1961(c)(1) looks to the Internal Revenue Code for the calculation of interest on overpayment and underpayments, the interest provisions therein apply, not the interest provisions of section 1961(a).

7

## II. THE CALCULATION OF UNDERPAYMENT INTEREST

Defendant states in its opposition papers that it calculated interest on the underpayment for plaintiff's 2000 taxes pursuant to 26 U.S.C. § 6601(a). The relevant language of that subsection provides the following:

> General rule. If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under [26 USCS § 6621] shall be paid for the period from such last date to the date paid.

26 U.S.C. § 6601(a).

In applying this statute, defendant followed this Court's finding that the Grand Carting sale was taxable during the 2000 tax year. Defendant then determined that although plaintiff paid taxes on the Grand Carting sale for 1998, he never did so on his 2000 taxes. Accordingly, defendant calculated how much plaintiff owed on his 2000 taxes with interest. An April 5, 2011 letter from the IRS's Long Island office states that as of April 20, 2009, that underpayment, with interest, had grown to a total of $88,914. (Druker Aff. Ex C.) Defendant also credited plaintiff's account with the overpayment from 1998 ($63,067 with interest through April 15, 2001) which would then be applied against any deficiency that plaintiff purportedly owed (with interest) from his 2000 taxes. According to defendant, however, this credit was not enough to offset the $88,914 deficiency that had accumulated on that 2000 tax liability. (*Id.*)

This method of calculating interest, however, was erroneous and inconsistent with provisions of the Internal Revenue Code and related case law. As will be explained in

8

more detail *infra*, because the Amended Judgment awarded plaintiff with an overpayment credit that was both effective prior to the due date for his 2000 taxes, and more than enough to pay for the amount due on those 2000 taxes, he should not have been assessed with a deficiency.

To begin, the Amended Judgment states that plaintiff is to be credited with an overpayment to his 1998 taxes "as of" September 18, 2000. It is beyond dispute that defendant credited plaintiff with that overpayment. It is also clear from the record that defendant applied this credit, with interest, towards plaintiff's 2000 tax liability. It is not clear, however, *when* that credit was made effective. The record suggests that whatever that date may be, the credit was not made effective as payment towards plaintiff's 2000 taxes on or before those taxes were due on April 15, 2001, as it should have been.

Here, the principal amounts of the 1998 overpayment and the 2000 underpayment are equal because they both derive from the same taxable event, *viz.*, the sale of Grand Carting.[10] And because plaintiff enjoyed this overpayment "as of" September 18, 2000, months before his 2000 tax payments were due, he would have had more than enough credit, after including interest, to cover those taxes. Had the overpayment credit been applied as payment on or before April 15, 2001, then his 2000 taxes would have been timely paid, and no interest would accumulate on an underpayment. *See Avon Products, Inc. v. United States of America*, 588 F.2d 342, 344

---

[10] To the extent that the sale of Grand Carting yields a higher tax liability in 2000 than it did in 1998 (that is also greater than the additional interest to plaintiff on the 1998 overpayment), the parties have not stated as much in their papers. The parties have also not indicated that plaintiff's 2000 underpayment involved any tax liability other than that arising from the Grand Carting sale.

(2d. Cir. 1978)(A taxpayer may only be charged interest under section 6601(a) when a tax becomes "both due and unpaid.")[11]

Nevertheless, regardless of when the overpayment credit is actually applied towards plaintiff's 2000 tax liability, defendant's method of calculating underpayment interest here still violates 26 U.S.C. § 6601(f). That provision reads as follows:

> Satisfaction by credits. If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment.

26 U.S.C. § 6601(f).

It is clear from the record that defendant applied plaintiff's overpayment, with interest, as payment towards plaintiff's tax 2000 tax liability. We know this because, as noted above, defendant stopped the accumulation of interest on plaintiff's overpayment on April 15, 2001 – the "the due date of the amount against which the credit [was] taken." *See* 26 U.S.C. § 6611(b)(1). Had defendant *not* applied this overpayment credit as payment towards plaintiff's 2000 taxes, then interest would continue to accumulate on

---

[11] IRS procedure normally requires that an overpayment arising on or before the due date of a subsequent tax year's return, will be applied against the first payment due on that subsequent year's taxes as of that due date, unless the taxpayer says otherwise. *See Rev. Rul.* 84-50. However, this procedure arguably applies only where the taxpayer has actually elected on a return to apply an overpayment to another year's estimated tax. Such is not the case here.

10

his overpayment after April 15, 2001 and continue to run until such time as defendant applies the overpayment to another tax liability or refunds his money.[12]

Returning to the language of section 6601(f), defendant is prohibited from calculating interest on any portion of an underpayment that is satisfied by an overpayment credit during a period in which that overpayment would otherwise accumulate interest had the credit not been so applied. *Id.* Here, defendant credited plaintiff's 1998 overpayment to his 2000 underpayment, and had it not, the overpayment would continue to earn interest in plaintiff's favor. Therefore, underpayment interest may only run after April 15, 2001 on the amount of plaintiff's underpayment that was not satisfied by the overpayment. As explained above, if anything, the overpayment was more than enough to cover the underpayment.

In essence, under §6601(f), defendant cannot have it both ways. It either stops the interest on both the underpayment and the overpayment on April 15, 2001, or allows them to both continue accumulating from that point forward. Either way, the result in this case is a net zero for the two parties in terms of interest earned or owing *after* April 15, 2001. *See* 26 U.S.C. §§6601(f), 6621(d)("To the extent that, for any period interest is payable . . . and allowable . . . on equivalent underpayments and overpayments by the same taxpayer . . . the net rate of interest under this section on such amounts shall be zero for such period.")

---

[12] Under 26 U.S.C. §6611(b), if the overpayment was not considered a credit, then plaintiff would be entitled to a refund with interest from the date of the overpayment to within 30 days of the date of a refund check.

This outcome is consistent with cases applying the "use-of-money" principle to the issue of underpayment interest. *See, e.g., Avon*, 588 F.2d 342, 343 ("[I]t is a clearly established principle that interest is not a penalty but is intended only to compensate the Government for a delay in payment of a tax."); *May Dep't Stores Co. v. United States*, 36 Fed. Cl. 680, 688 n.12 (Fed. Cl. 1996)("Interest should not be charged for a period when the underlying taxes were fully paid and the government had full use of the monies due and paid for that period."); *Sequa Corp. v. United States*, No. 95 Civ. 2086 (KMW), 1996 U.S. Dist. LEXIS 5288, *13 (S.D.N.Y. 1996)("Interest may be charged only for the loss of the use of money.")(citing *Rev. Rul. 88-98*)(internal alterations omitted).

The cases cited above involve a somewhat different and far more complicated scenario from the one here. In *Avon*, for example, the taxpayer, like plaintiff here, overpaid taxes in year one and applied that overpayment to its estimated taxes for year two. The difference is that after having applied the year one credit to year two, the taxpayer discovered that the original overpayment from year one was not as large as originally calculated, though the recalculated sum was still more than enough to have covered its taxes for that first year. However, because the taxpayer had already applied a larger credit to his estimated taxes for year two than had actually existed, the new calculation produced a "later created deficiency" to the taxes for year one.

The question in *Avon,* 588 F.2d 342, was whether the Government could assess underpayment interest during the period in which it possessed the overpayment funds from year one but had not yet credited that money to year two. The court stated that a taxpayer may only be charged interest under section 6601(a) when a tax becomes "both

due and unpaid." *Id.* at 344. The Second Circuit therefore held that underpayment interest could not be assessed during the period in question because although the original overpayment was later reduced, it was nevertheless still more than enough to cover the taxes for year one, and it remained so until the overpayment was credited to the taxes for year two. Until that time, the year one taxes were due but paid, and underpayment interest could therefore not be assessed.

The situation here is much simpler, but the same principle nevertheless applies. Plaintiff was credited with a 1998 overpayment as of September 18, 2000 in an amount that was equal to (or greater) than his tax liability for 2000. Therefore, on April 15, 2001, when his 2000 taxes were due, plaintiff had more than enough credit with defendant to cover those taxes. Under the reasoning in *Avon*, plaintiff's 2000 taxes here were never both due and unpaid because defendant had more than enough on hand from plaintiff, as of the due date, to pay those taxes. No underpayment interest can therefore be assessed.

One could nevertheless attempt to distinguish *Avon* by suggesting that in that case, the court was looking at overpayments that were originally made for the same year in which the underpayment later arose, whereas here, the overpayment credit came from a different year than the one for which underpayment interest in being assessed. In other words, one could argue (as is discussed above) that the overpayment credit here was not actually applied as payment towards 2000 on or before those taxes were due on April 15, 2001. In that scenario, the 2000 taxes would technically be due and unpaid. But under the "use-of-money" principle, whether or not the 1998 credit was applied as payment before April 15, 2001 makes no practical difference for present purposes.

13

So long as defendant possesses a credit owed to plaintiff, but chooses not to apply that credit as payment towards plaintiff's tax liabilities, then defendant has the use of this money, not plaintiff.  *See Sequa,* 1996 U.S. Dist. LEXIS 5288 at *13 ("[T]he significant date for interest to start running [under §6601(a)] is the point at which the Government loses the use of the money in question as a payment [towards a given tax liability].") (quoting Gen. Couns. Mem. 39,772, p.2 (April 12, 1985); *see also id.* ("In a credit situation, this occurs when the credit is effective as a payment of next year's estimated tax.").  And so long as defendant has the use of this money, plaintiff is equally entitled to interest on his overpayment as defendant is on its underpayment.  Of course, once defendant applies this credit as a payment towards those taxes, defendant no longer has the use of plaintiff's money and plaintiff no longer owes defendant for the underpayment.  At that point, interest on both the overpayment and the underpayment must stop.

This is precisely the result achieved through the interest netting provision of 26 U.S.C. § 6601(f), discussed above.  The following was noted by a district court applying that provision

> The interest tolling effects of § 6601(f) create a type of legal fiction that payment was made on a certain prior date. That is what differentiates a credit from a refund, where the money would then need to be turned back over to the Government to satisfy any prior liability and the provisions of § 6601(a) would apply. This fiction is sensible, as it is illogical that the Government would owe any interest to a party which has paid an undisputed liability. Likewise, it would be illogical to charge a taxpayer interest after it had paid its liability. Money can only lie in one pocket. Therefore, if the tax is paid, the funds belong to the Government and the taxpayer has no claim to any interest.

*United States v. LaRosa*, 993 F. Supp. 907, 914 (D. Md. 1997).

Accordingly, plaintiff's account with defendant should be rectified to reflect that plaintiff is entitled to the amount of his 1998 overpayment with interest from September 18, 2000 to April 15, 2001, minus the amount of his 2000 tax liability due as of April 15, 2001. Assuming this difference, as of April 15, 2001, is greater than or equal to zero, no underpayment interest may be deemed to have accrued after April 15, 2001, unless the overpayment interest is likewise deemed to have accrued during the same period and at the same rate.

Simply put, and to partially reiterate, defendant cannot charge plaintiff interest on a tax liability that could have been timely paid with money owed to plaintiff but in the Government's possession at the time that liability was due.

### III.   THE RELIEF SOUGHT

Although plaintiff's notice of motion cites the statute for criminal contempt, 18 U.S.C. §401, the notice nevertheless indicates that plaintiff is seeking "civil contempt of the judgment." (Notice of Motion, docket no 44.)   The Court therefore construes plaintiff's application as one for civil contempt pursuant to Rule 70(e).  *See* Fed. R. Civ. P. 70(e)(permitting contempt motions to enforce judgments requiring the performance of a "specific act").

"A civil contempt sanction under Rule 70 serves to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses

resulting from the contemnor's past noncompliance." *Board of Trustees of the Local 295/Local-I.B.T. Employer Group Pension Trust Fund v. Hail Air Freight, Inc.*, No. 06 Civ. 528 (GEL), 2008 U.S. Dist. LEXIS 31267 (S.D.N.Y. Apr. 16, 2008) (internal quotation marks and citation omitted). In order to establish contempt, a movant must show by clear and convincing evidence: (1) a clear and unambiguous order; (2) clear and convincing proof of noncompliance of the order; and (3) that the contemnor has not diligently attempted to comply in a reasonable manner. *Perez v. Danbury Hosp.*, 347 F.3d 419, 423-24 (2d Cir. 2003).

The Amended Judgment states that plaintiff "has an overpayment credit as of September 19, 2000 to his 1998 income tax account." It further states that "[i]nterest shall accrue on the overpayment according to law from September 18, 2000." At first blush, this language in the Amended Judgment would appear to implicate only the awarding of the overpayment and the interest earned thereon, not the calculation of the underpayment interest – an ostensibly separate matter. Further, it might also appear from the discussion in Section I *supra*, that defendant complied with the terms of the Amended Judgment, *i.e.*, that plaintiff was awarded the overpayment credit, and the interest earned from that overpayment was properly calculated pursuant to 26 U.S.C. § 6611(b)(1).

However, as is clear from the analysis above, the proper calculation of the overpayment interest here is directly dependent on the proper calculation of the underpayment interest. Stated differently, if plaintiff's underpayment never existed, then compliance with the Amended Judgment would require the running of interest on plaintiff's overpayment after April 15, 2001. This was not the case, and the fact that

16

plaintiff's overpayment interest did stop on this date was a direct result of the subsequent underpayment and defendant's calculation of interest on that underpayment. The Court must therefore consider the propriety of the calculation of interest on both the overpayment and the underpayment in determining whether defendant has complied with the terms of the Amended Judgment.

As discussed above, by assessing an $88,914 deficiency on plaintiff's 2000 taxes, defendant has not properly calculated interest on plaintiff's "overpayment according to law from September 18, 2000." Nevertheless, given the complexity of the issues involved and the fact that defendant applied the relevant provisions of the Internal Revenue Code, albeit incorrectly, to the calculation of interest on plaintiff's tax account, the Court cannot conclude that defendant has not "diligently attempted to comply in a reasonable manner." *Perez*, 347 F.3d at 424. The Court therefore denies plaintiff's motion to hold defendant in contempt for failing to comply with the Amended Judgment. Additionally, plaintiff's concomitant motion for attorney's fees attributable to his contempt motion is also denied.

However, defendant still possesses an obligation to fully comply with the Amended Judgment, which includes the correct calculation of plaintiff's overpayment interest. In that regard, defendant is hereby ordered to take the necessary measures to comply with the Amended Judgment in a manner not inconsistent with this Order[13] within 30 days of its entry.

---

[13] The precise accounting that plaintiff is entitled to under this Order is specified in the second to last paragraph of the preceding section at page 15.

17

## CONCLUSION

Plaintiff's motion is granted in part, and denied in part. The Court denies plaintiff's request for an order of contempt and for attorney's fees, but grants his request for an order directing defendant to recalculate the interest on his overpayment. Defendant shall file a report with this Court by within 30 days of the entry of this Order demonstrating that it has taken the necessary steps to comply with the Amended Judgment not inconsistent with the directives set forth above.


SO ORDERED.

Dated: Central Islip, New York
       March 22, 2012

                                          /s/
                                          Denis R. Hurley
                                          Unites States District Judge