UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JOSEPH CARIONE,

                        Plaintiff,

                                                           **ORDER**
           - against -                                   **03 CV 4024 (DRH)**

UNITED STATES OF AMERICA,

                        Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Kase & Druker**
Attorneys for Plaintiff
1325 Franklin Avenue, Suite 225
Garden City, New York 11530
By:    James O. Druker

**Alan Martin Shapiro**
Attorney for Defendant
U.S. Department of Justice
Civil Trial Section, Northern Region
P.O. Box 55 Ben Franklin Station
Washington, DC 20044-0055

**HURLEY, District Judge:**

       This Order confirms the accuracy of defendant's Status Report filed in response to the Court's March 22, 2012 Memorandum & Order ("M&O"). (*See* Status Report, dated 4/20/12); *see also Carione v. United States*, 2012 U.S. Dist. LEXIS 39439 (E.D.N.Y. Mar 22, 2012). The subject M&O found that defendant had erroneously calculated the overpayment and underpayment interest arising from a tax credit previously awarded to

plaintiff in this action on November 27, 2006.[1] The underlying facts and procedural history of this case are set forth in detail in the prior decisions of this Court. Familiarity with such facts is therefore assumed. By way of summation, however, by Order dated March 22, 2005, the Court determined that because the proceeds from the sale of plaintiff's trash-hauling business were transferred from an escrow account to the United States Treasury in the year 2000 in satisfaction of a criminal forfeiture judgment against plaintiff, the capital gain from that sale was taxable in 2000, not 1998 – the year in which plaintiff previously reported and paid taxes on those proceeds. Accordingly, the Court entered judgment awarding plaintiff "an overpayment credit, as of September 19, 2000, to his 1998 income tax account" totaling $54,783.48. (*See* Amended Judgment dated 11/27/06, docket no. 41.)

As the result of what the Court previously found, based on the limited record then before it, to be an erroneous calculation of the overpayment and underpayment interest on that credit, the Court directed defendant in the M&O, in relevant part, to rectify plaintiff's IRS account:

> . . . to reflect that plaintiff is entitled to the amount of his 1998 overpayment with interest from September 18, 2000 to April 15, 2001, minus the amount of his 2000 tax liability due as of April 15, 2001. Assuming this difference, as of April 15, 2001, is greater than or equal to zero, no underpayment interest may be deemed to have accrued after April 15, 2001, unless the overpayment interest is likewise deemed to have accrued during the same period and at the same rate.

(M&O at 15.)

---

[1] Additionally, the M&O denied plaintiff's concomitant request for an order of contempt and for attorney's fees incurred in bringing the prior motion.

The Court's finding that the interest calculation was erroneous was based on an assumption, embodied in the above quote, that plaintiff's underpayment liability for the year 2000 was no greater than plaintiff's overpayment credit for the year 1998. In fact, the Court noted more than once in its M&O that it was operating from this assumption, because the parties' motion papers had given the Court no reason to conclude otherwise. For example, a footnote in that decision reads as follows:

> To the extent that the sale of Grand Carting yields a higher tax liability in 2000 than it did in 1998 (that is also greater than the additional interest to plaintiff on the 1998 overpayment), the parties have not stated as much in their papers. The parties have also not indicated that plaintiff's 2000 underpayment involved any tax liability other than that arising from the Grand Carting sale.

(M&O at 9, n.10.)

In its Status Report to the Court, however, defendant now asserts that this assumption was not valid because there were, in fact, "differences in the items of income, expense, and alternative minimum tax that plaintiff reported in 1998 as compared to in 2000, and in the adjustments to those items that follow as a matter of law from the exclusion or inclusion of capital gains from the sale of [plaintiff's trash hauling business]." (Status Report at 1.) In other words, plaintiff's tax liability in 2000 was indeed greater than his liability for 1998.

That these differences were not highlighted in the prior motion is unfortunate, as it would have spared the Court considerable time and resources in rendering its prior M&O, and in issuing the instant Order. Defendant, concedes as much in its Report, stating:

> [W]ith 20/20 hindsight, the parties should have provided the Court with more of the facts that would have been helpful for it to evaluate the appropriateness of the government's calculation of a deficiency in Plaintiff's 2000 taxes, which was upheld by the Tax Court. More than once in the Memorandum and Order, dated March 22, 2012, the Court noted this problem and the potential for additional facts to indicate that, even after properly crediting 1998 overpayments to Plaintiff's 2000 taxes, he may still have a tax liability in 2000.
>
> . . .
>
> Because the parties did not submit all of the evidence or information that the Court needed, the Memorandum and Order contains some misstatements based on an incorrect assumption that there are no differences in the items of income and expense, and the application of the tax laws to them, for plaintiff's 1998 and 2000 tax years resulting from the inclusion or exclusion of $388,301.00 of capital gains from the sale of Grand Carting.
>
> . . .
>
> . . . [T]he mistake is understandable, and it is attributable to the parties' failure to provide the Court with all of the evidence or facts necessary for the analysis.

(Status Report at 7-8, 11.)

Defendant's Status Report sufficiently accounts for the parties' prior omission by providing a detailed, and much needed, account of why plaintiff's 1998 overpayment credit was *not*, in fact, greater than his 2000 underpayment liability. The Court provides a brief summary of those reasons below.

As an initial matter, however, plaintiff responds to defendant's Status Report by characterizing it as a "motion to reargue disguised, as compliance with the order," and claiming that defendant has engaged in an "inexplicable refusal to undertake [its] obligation" to comply with the M&O. (Plaintiff's Letter dated 4/20/12.) In fact, the Status Report, which was mandated by the Court, does not challenge the fundamental

4

directives of the M&O, *viz.* "that plaintiff is entitled to the amount of his 1998 overpayment with interest from September 18, 2000 to April 15, 2001, minus the amount of his 2000 tax liability due as of April 15, 2001." (M&O at 15.) Rather, the Status Report indicates that the Court based its conclusion that the amount plaintiff purportedly owed the IRS needed to be recalculated on insufficient information regarding plaintiff's account. Although plaintiff insists in his response letter that he "is being levied upon for a collection of a tax that he paid prior to it being due," and that "the government remains determined to punish [plaintiff] for having prevailed in the underlying action," (4/20/12 Letter), beyond these conclusory statements in a one-page letter, he fails to offer any explanation as to precisely why the calculations set forth in defendant's Status Report are erroneous.

The Report demonstrates that when the capital gains on the proceeds of the sale of plaintiff's business are reported in 1998, and calculated in conjunction with the other items reported on that year's return, plaintiff owes a total tax liability of $54,783.48. However, when those same gains are reported in 2000, and calculated in conjunction with the rest the 2000 return, plaintiff owes a total of $88,914 in taxes for that year. As the Report explains:

> (1) plaintiff reported no social security income in 1998, but he did in 2000, (2) the amount of itemized deductions that he claimed in 1998 was much less than he claimed in 2000, and (3) he was not subject to the alternative minimum tax in 1998, but he was in 2000. The difference also results from the fact that the inclusion of the gain from the sale of Grand Carting in 2000 increased the amount of plaintiff's adjusted gross income and increased the amount of his alternative minimum taxable income.

(Status Report at 14.)

Plaintiff's total overpayment credit with interest and other additions comes to $57,652.62, but his liability for the tax year 2000, when reporting the subject capital gains in that year, is $88,900. This difference between the two is $32,147.38, from which the IRS subtracted $886 – the amount previously paid by plaintiff for his 2000 taxes. The result is a year-2000 tax underpayment in the amount of $31,261.38. Interest on that underpayment runs from the date it would have originally been due, or April 15, 2001, to the date it is paid. *See* 26 U.S.C. § 6601(a). This amount, of course, has not been paid and, according to defendant, as of April 6, 2012, plaintiff's underpayment with interest totaled $62,475.67. (Status Report at 13.)

Based on the explanation and supporting materials provided by the government, these calculations appear to be sound, and in accordance with both the law and the directives of the Court's M&O. Further, as noted above, plaintiff has offered an insufficient argument to the contrary. The Court therefore confirms the correctness of defendant's Status Report, and the amount of plaintiff's tax liability stated therein as of April 6, 2012.

SO ORDERED.

Dated: Central Islip, New York
July 25, 2012

                                                    /s/
                                              Denis R. Hurley
                                              Unites States District Judge